Approved: _____          **ORIGINAL**
          Mathew S. Andrews
          Assistant United States Attorney

Before:   HONORABLE LISA MARGARET SMITH
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - - X
                                       :   19 mag 1009
                                       :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA               :
                                       :   Violations of
     - v. -                            :   18 U.S.C. §§ 2,
                                       :   1343, 1349, 1956
ROCCO ROMEO,                           :
JACQUELINE GALLER,                     :   COUNTY OF OFFENSE:
a/k/a STAR GALLER,                     :   Orange
                       Defendants.     :
                                       :
- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

      MARISSA TUOHY, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Wire Fraud)

      1.   From at least in or about August 2015, up to and including at least in or about December 2018, in the Southern District of New York and elsewhere, ROCCO ROMEO and JACQUELINE GALLER, a/k/a STAR GALLER, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and object of the conspiracy that ROCCO ROMEO and JACQUELINE GALLER, a/k/a STAR GALLER, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, ROMEO and GALLER submitted nearly $900,000 in false and fraudulent invoices to ROMEO's New Jersey-based employer (the "Company") for alleged information technology ("IT") services, when in reality ROMEO and GALLER were syphoning these funds into personal accounts, in violation of Title 18 United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 2.)

## COUNT TWO
(Wire Fraud)

3. From at least in or about August 2015, up to and including at least in or about December 2018, in the Southern District of New York and elsewhere, ROCCO ROMEO and JACQUELINE GALLER, a/k/a STAR GALLER, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, ROMEO and GALLER submitted nearly $900,000 in false and fraudulent invoices to ROMEO's New Jersey-based employer (the "Company") for alleged information technology ("IT") services, when in reality ROMEO and GALLER were syphoning these funds into personal accounts, in violation of Title 18 United States Code, Section 1343.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
(Conspiracy to Commit Money Laundering)

4. From at least in or about August 2015, up to and including at least in or about December 2018, in the Southern

District of New York and elsewhere, ROCCO ROMEO and JACQUELINE GALLER, a/k/a STAR GALLER, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i).

5.   It was a part and an object of the conspiracy that ROCCO ROMEO and JACQUELINE GALLER, a/k/a STAR GALLER, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did knowingly conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud conspiracy charged in Count One of this Complaint, with the intent to promote the carrying on of that specified unlawful activity.

6.   It was further a part and an object of the conspiracy that ROCCO ROMEO and JACQUELINE GALLER, a/k/a STAR GALLER, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did knowingly conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud conspiracy charged in Count One of this Complaint, knowing that the transaction was designed in whole and in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of that specified unlawful activity.

(Title 18, United States Code, Section 1956(h))

### COUNT FOUR
(Money Laundering)

7.   From at least in or about August 2015, up to and including at least in or about December 2018, in the Southern District of New York and elsewhere, ROCCO ROMEO and JACQUELINE GALLER, a/k/a STAR GALLER, the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did willfully and knowingly, conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, (a) with the intent to

3

promote the carrying on of specified unlawful activity; and (b) knowing that the transaction was designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit, after receiving the proceeds of the wire fraud into accounts at two credit card processing companies registered to fictitious companies and a shell corporation, ROMEO and GALLER then transferred the funds either to personal accounts or to a bank account registered to a shell corporation that they incorporated and controlled. They then used the funds from the shell corporation's bank account to pay credit card bills and make deposits in accounts in their own names.

(Title 18, United States Code, Sections 1956(a)(1)(A)(i), (B)(i), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

8.  I am a Special Agent with the Federal Bureau of Investigation. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement officials and others, my examination of various reports and records, and physical surveillance. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

9.  Based on my investigation of this matter, and as set forth more fully below, from at least in or about August 2015, up to and including at least in or about December 2018, in the Southern District of New York and elsewhere, ROCCO ROMEO and JACQUELINE GALLER, a/k/a STAR GALLER, the defendants, and others known and unknown, planned and executed a fraudulent scheme whereby ROMEO and GALLER incorporated a shell company known as S7 TECHNOTECH LLC and used the company to bill nearly $900,000 of expenses to ROMEO's employer, the Company, using false charges and invoices. Specifically, ROMEO and GALLER used entities located in Canada and California to generate fraudulent invoices and sent them electronically to the Company's headquarters in New Jersey. ROMEO, who was the head of the

4

Company's IT Department, paid the fraudulent invoices using his Company credit card, after which the proceeds went into accounts at two credit card processing companies registered either to fictitious companies—S7EVENTECH and SEVEN.TECH—or a shell corporation—S7 TECHNOTECH LLC. ROMEO and GALLER then transferred the funds from these accounts to personal accounts or to a bank account registered to the shell corporation that they incorporated and controlled. ROMEO and GALLER afterwards used the funds to pay personal expenses.

## The Investigation

10. Based on conversations with a representative of ROMEO's employer (the "Company") and my review of documents provided by the Company, I have learned, among other things, the following:

   a. In the summer of 2018, the Company performed a cost review by business unit and found excessive spending by the Information Technology ("IT") Department, headed by ROCCO ROMEO, the defendant. The Company maintains its headquarters and IT Department in New Jersey.

   b. A breakdown of IT costs by vendor revealed almost $900,000 in charges to a firm called SEVENTECH between August 2015 and December 2018. SEVENTECH also listed its name on invoices as S7EVENTECH or SEVEN.TECH.

   c. SEVENTECH invoiced the Company using several methods. It first used a company known as FreshBooks, which is located in Canada and sells cloud-based accounting services. Users transmit invoices through FreshBooks by creating an account and sending invoices to recipients electronically. SEVENTECH sent FreshBooks invoices directly to ROMEO, who then provided them to the Company only upon request.

   d. In other instances, SEVENTECH invoiced the Company using a third party credit card processor, PayPal, which is headquartered in San Jose, California. Users send invoices through PayPal by creating an account and sending "requests for payment" to other PayPal users. SEVENTECH sent PayPal requests for payment directly to ROMEO.

   e. SEVENTECH invoices show charges for services such as data center hosting, VPN provision, and backup solutions. The Company, however, already obtains these services

through a dedicated data center and agreements with another web services provider.

    f. The Company interviewed ROMEO as part of the cost review. ROMEO represented to the Company, in sum and substance, that SEVENTECH is comprised of former Silicon Valley technology company employees who are operating under (and potentially violating) non-disclosure agreements with their former employers. ROMEO further represented that as a result, all communications with SEVENTECH must go through him.

    11. Based on my review of documents provided by the Company, my discussions with other law enforcement officers, and open source information, I have learned, among other things, the following:

    a. The invoices from FreshBooks list the address for SEVENTECH, also stylized as S7EVENTECH and SEVEN.TECH, as 733 Third Avenue, 15th Floor, New York, New York, 10017.

    b. The company located at 733 Third Avenue, 15th Floor, New York, New York, 10017 rents temporary office space to businesses.

    c. A law enforcement officer contacted the company located at 733 Third Avenue, 15th Floor, New York, New York, 10017 and spoke to a representative. The representative stated, in sum and substance, that he has worked for the company for five years in customer service operations and that he did not recognize the names S7EVENTECH, SEVENTECH, or SEVEN.TECH.

    12. Based on my review of financial records from PayPal, WePay, JP Morgan Chase, Citibank, Capital One, and account records from Optimum Online and Charter Communications, I have learned, among other things, the following:

    a. Each month, ROCCO ROMEO, the defendant, paid SEVENTECH's invoices using his Company credit card.[1] Payments from ROMEO then took two different routes to SEVENTECH depending on whether the invoice was from FreshBooks or PayPal.

---

[1] The Company pays ROMEO's Company credit card using money from its own financial accounts.

          b.    If the invoice was from FreshBooks, the payment first went to WePay, a credit card processing company headquartered in San Jose, California. WePay has a SEVENTECH account registered to JACQUELINE GALLER, a/k/a STAR GALLER,[2] the defendant, using email address "sales@s7eventech.com."

          c.    After the funds arrived in SEVENTECH's WePay account, they were transferred to an account at JP Morgan Chase. IP address information from WePay shows that an IP address registered to GALLER at an address in Sugar Loaf, New York accessed SEVENTECH's WePay account several times in October 2018.

          d.    Bank records further show that GALLER opened the subject JP Morgan Chase account in August 2015 in the corporate name of "S7 TECHNOTECH LLC."

          e.    After money arrived in the JP Morgan Chase account, GALLER distributed the funds in three principal ways. First, GALLER or other unidentified persons made cash withdrawals at ATMs located in Orange County, New York. Second, GALLER made online payments to a credit card issued in her name. Third, GALLER made electronic transfers to a Chase bank account owned by ROMEO.

          f.    Charges on GALLER's credit card do not reflect payments to alleged "former Silicon Valley technology company employees." Likewise, ROMEO used funds in his Chase bank account to pay personal expenses.

          g.    ROMEO's payments to SEVENTECH through PayPal follow a similar pattern.

          h.    PayPal, like WePay, has a SEVENTECH account registered to GALLER, using email address "sales@s7eventech.com." IP address information from PayPal shows that an IP address registered to GALLER at 2 Pine Hill Road, Sugar Loaf, New York accessed SEVENTECH's PayPal account several times in 2018.

          i.    After ROMEO paid the fraudulent invoice from PayPal, the funds were temporarily placed in GALLER's PayPal account. GALLER then used these funds to pay personal expenses or transmitted the funds to a PayPal account owned and operated

---

[2] The WePay account is registered to the name STAR GALLER rather than JACQUELINE GALLER.

7

by ROMEO. ROMEO used the funds transmitted to his PayPal account to pay a credit card issued in his name for personal expenses.

13. Based on conversations with an employee at the Company, my review of toll records, my review of open source information, and my own physical surveillance, I have learned that ROMEO and GALLER have had extensive personal dealings. In particular, I have learned:

a. JACQUELINE GALLER, a/k/a STAR GALLER, the defendant, owns Galler Yarns, a yarn shop in Monroe, New York, and lives in Sugar Loaf, New York. Galler Yarns' website was designed and hosted by RFORCE SOLUTIONS LLC ("RFORCE").

b. ROCCO ROMEO, the defendant, has used the email address rromeo@rforcesolutions.com. RFORCE's articles of incorporation, filed with New York state, further list one of RFORCE's addresses as located at ROMEO's home address.

c. Cellphone records further show calls, texts, and picture messages, some at midnight or later, between cell phone number ending -3004 and cell phone number ending -3355. The subscriber for cell phone number -3004 is a yarn business that shares an address with Galler Yarns. Based on information from the Company, ROMEO uses the number -3355 as his corporate cell phone.

d. ROMEO and GALLER have further had personal contact. On the morning of January 7, 2019, law enforcement observed ROMEO, who lives in Washingtonville, New York, leaving GALLER's place of residence in Sugar Loaf, New York.

14. Based on my review of financial records from PayPal and WePay, I have learned, among other things, the following:

a. NameSilo LLC, an anonymous domain registrar, registered "s7eventech.com" on August 15, 2015. The day before, on August 14, 2015, ROCCO ROMEO, the defendant, received a $150 charge from NameSilo LLC on his PayPal account.

b. From August 2015 to December 2018, the only invoices sent by SEVENTECH using the credit card processors described above were to the Company.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ROCCO ROMEO and JACQUELINE GALLER,

a/k/a STAR GALLER, the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

_____
MARISSA TUOHY
Special Agent
Federal Bureau of Investigation

Sworn to before me this
31st day of January 2019

_____
HONORABLE LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK